**HEIMERL LAW FIRM**
Wolfgang Heimerl (WH-5192)
30 Wall Street, 8th Floor
New York, New York 10005
Telephone: (212) 709-8370

Attorneys for Plaintiffs
**DONALD UNGER and LINICO CORP.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DONALD UNGER and LINICO CORP.,**<br><br>                              Plaintiffs,<br>vs.<br><br>**ALL ISLAND MARINE CORP., PETER ERIKSEN, SEAN ERIKSEN, and VOLVO PENTA OF THE NORTH AMERICAS LLC,**<br><br>                              Defendants. | **COMPLAINT**<br><br>Case No. _____ |

Plaintiffs, Donald Unger and Linico Corp. ("Plaintiffs"), residing and maintaining an office at 2 Canoe Lane, Roseland, New Jersey, by way of Complaint against Defendants, All Island Marine Corp., Peter Eriksen and Sean Eriksen (Collectively "Eriksen" and together with All Island Marine Corp., the "Defendants") all having their principal place of business at 480 Reina Road, Oceanside, New York; and Volvo Penta of the Americas, LLC having its principal place of business at 1300 Volvo Penta Drive, Chesapeake, Virginia; state as follows:

**Jurisdiction and Venue**

1. Inasmuch as complete diversity exists among the Plaintiffs and Defendants, and the amount in controversy, exclusive of interest and costs, exceeds the jurisdictional requirement of $75,000.00, jurisdiction is appropriate pursuant to 28 U.S.C. § 1332.

-1-

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) inasmuch as defendant, All Island Marine Corp., ("All Island") is a New York corporation with principal place of business in New York; and a substantial portion of the events or omissions giving rise to the claims occurred in the Eastern District of New York in Nassau County.

**The Parties**

3. Plaintiff, Donald Unger is a resident of the State of Florida, residing at 5734A Fox Hollow Drive, Boca Raton, Florida.

4. Plaintiff Linico Corp. is a New Jersey corporation maintaining an office at 2 Canoe Lane, Roseland, New Jersey and was at all relevant times the title owner of a certain 1999 Apreamare, Cabinato Semicab, 40 feet in length (the "Boat").

5. Upon information and belief, Defendant, All Island, is a New York corporation maintaining an office for the sales and service of marine vessels at 480 Reina Road, Oceanside, New York.

6. Upon information and belief, Defendant, Peter Eriksen is an owner, officer and/or director of Defendant All Island and dominates and/or controls the actions of All Island.

7. Upon information and belief, Defendant, Sean Eriksen is an owner, officer and/or director of Defendant All Island and dominates and/or controls the actions of All Island.

8. Upon information and belief Defendant, Volvo Penta of the Americas, LLC ("Volvo") is the manufacturer and warranty provider of marine engines, including the engines on the Boat having its principal offices at 1300 Volvo Penta Drive, Chesapeake, Virginia.

## Background

9. In or about 2001 the Plaintiffs purchased the Boat.

10. Plaintiffs regularly operated the Boat from Florida to New Jersey. On or about September 13, 2014, the boat was taken, under its own power, to All Island for a suspected oil leak in the port engine.

11. As set forth in more detail below, the Boat was in the sole and exclusive possession of All Island from the time of its arrival on September 13, 2014 until its release on October 27, 2016.

12. Upon information and belief, All Island repaired the oil leak in the port engine shortly after the Boat arrived at All Island.

13. On September 29, 2014, All Island took the Boat for a sea trial allegedly to ensure that the port engine was properly repaired.

14. The VODIA report of the sea trial (9-29-2014) indicated that the 268 degree maximum engine temperature was exceeded for 5,578 seconds (nearly 93 minutes) (A true and correct copy of the September 29, 2014 VODIA report is annexed hereto as Exhibit A).

15. Upon information and belief, there would have been no need to sea trial the Boat to determine if the oil leak persisted, as that could have, and should have, been determined through an in yard test.

16. An initial marine survey of the boat was conducted on October 15, 2014 and it was opined that "If the vessel struck a sand bar and was put in forward & reverse to free itself-this could have caused the damage." (A true and correct copy of the initial marine survey, dated November 1, 2014, is annexed hereto as Exhibit B).

17. A further marine survey report was rendered on December 11, 2014 which indicated that the "VODIA for this engine and the print out clearly indicates the date of failure as 9-29-2014." (A true and correct copy of the initial marine survey, dated December 11, 2014, is annexed hereto as Exhibit C).

18. While the marine survey could not conclusively determine the cause of the overheating condition, whether it be that the Boat was run aground, the repairs, or a result of any other internal condition - what is conclusive is that the engine failure occurred on September 29, 2014 while on the sea test performed by All Island.

19. Upon information and belief, in a deliberate attempt to mislead the Plaintiffs, All Island's Service Manager (the son of the principal of All Island) stated the "sea trail results" showed "-temp 180 port // 180 stbd" which is in direct contradiction to the VODIA report (A true and correct copy of a October 19, 2016 e-mail from All Island to Plaintiffs is annexed hereto as Exhibit D).

20. With a blown starboard engine, and the Boat still in the possession of All Island, Plaintiffs had no other viable alternative than to have the starboard engine rebuilt.

21. The Plaintiffs paid for the Boat to be winterized and shrink wrapped for the 2014-2015 winter with the expectation that the engine would be rebuilt by the Spring of 2015.

22. During the winter storage period, All Island failed to either: (i) disconnect and/or remove all batteries; or (ii) connect the Boat to shore power.

23. When the Boat was ready to be tested, each of the batteries were dead and needed to be replaced.

24. All Island provided Estimate #10340 in December 2014 (and revised in June of 2015

when the Boat had not yet been repaired) for a total of $46,226.53 (A true and correct copy of All Islands Estimate #10340 is annexed hereto as Exhibit E)

25. On our about July 28, 2015, Plaintiffs paid the sum of $15,000 which was required by All Island prior to All Island commencing the work to rebuild the starboard engine (A true and correct copy of All Island Marine's Account Ledger for Plaintiffs, dated June 1, 2016, is annexed hereto as Exhibit F)

26. In fact, by April 15, 2016, Plaintiffs paid the total sum of $34,838.57 on account of the repairs to the starboard engine (*See,* All Island Marine's Account Ledger for Plaintiffs, dated June 1, 2016).

27. All Island represented to Plaintiffs that the Boat would be ready for a sea trial by the Memorial Day weekend 2016, however the Boat was not ready.

28. All Island next promised that the Boat would be ready for a sea trial by the July 4th weekend 2016, but again the Boat was not ready to be sea trialed.

29. All Island then demanded that Plaintiffs pay the remaining sum of $12,434.00 before the Boat would be released to the Plaintiffs.

30. On or about October 27, 2016, after the entire 2016 summer season had passed, Plaintiffs reluctantly paid the amounts requested by All Island, so that the Boat could be released.

31. The Boat was exclusively in custody and control of All Island from September 13, 2014 through October 27, 2016.

32. When the Boat was retrieved, the condition of the Boat made it evident that: (i) the interior of the Boat was not protected and/or cared for when the Boat was being repaired

by All Island, and (ii) despite being charged for shrink wrapping the Boat, the Boat was exposed to the elements and/or was damaged at the hands of All Island. (A true and correct copies of certain photographs of the condition of the Boat when it was picked up are annexed hereto as Exhibit G)

33. After retrieving the Boat form All Island, the Boat made it as far as New Jersey when the engines, both of which All Island repaired, failed. The Boat was docked at Wehrlen Bothers Marina ("Wehrlen") in Brick, New Jersey.

34. While atWehrlen, Monmouth Marine Engines, Inc. ("MME") conducted an evaluation and described in detailed the repairs required to both the port and starboard engines. MME also stated that it "strongly recommend vessel is hauled until issues can be addressed" (A true and correct copy of MME's e-mail to Plaintiffs, dated November 1, 2016, is annexed hereto as Exhibit H)

35. Upon receipt of MME's evaluation of the Boat, Plaintiffs contacted both All Island and Volvo to make a claim for repairs under any manufacturer and dealer warranty with regard to the parts and labor associated with the repairs required to be made to the Boat.

36. Despite being reported to Volvo's rapid response unit, two authorized Volvo service centers (one in Perth Amboy, New Jersey and one in Seaside, New Jersey) were either too busy or too far away to respond.

37. Neither All Island nor Volvo have agreed to undertake and repairs based on a claim of any available parts and/or labor warranty.

38. It was also discovered that certain items (*e.g.* the gaff and fire extinguishers) that were present on the Boat when All Island took possession of the Boat are now missing.

39. It is estimated that the costs to repair the mechanics of the Boat and restore the condition

of the Boat to the condition it was in on September 13, 2014 would have exceeded the sum of $65,000.

40. Plaintiffs have attempted to sell the Boat but without a prospective buyer being able to sea trial the Boat, the value of the Boat has been diminished by at least $75,000.

41. Plaintiff ultimately made a charitable donation of the Boat as it could not be sold in its then condition and All Island and Volvo refused to repair same.

42. Additionally, the Plaintiffs have been deprived of the use and enjoyment of the Boat for at least the 2015 and 2016 seasons due to the actions of All Island.

43. Furthermore, the Plaintiff Donald Unger has experienced severe emotional distress due to the intentional and/or negligent actions of All Island.

### AS AND FOR THE FIRST CAUSE OF ACTION
### BREACH OF CONTRACT AND/OR WARRANTY
### (AGAINST ALL ISLAND AND ERIKSEN)

44. Plaintiffs incorporate and restate Paragraphs 1 through 43 above as if fully set forth herein at length and in detail.

45. On or about September 13, 2014, All Island took exclusive custody and control of the Boat to repair an oil leak in the port engine.

46. On or about September 29, 2014, All Island conducted a sea trial of the Boat to test the repair of the oil leak in the port engine.

47. Upon information and belief, All Island hit a sand bar when conducting the sea trial and caused damage to the starboard engine.

48. Following the damage to the starboard engine of the Boat, Plaintiffs contracted with All Island to repair/rebuild the starboard engine with a Spring 2015 completion date.

49. Defendant All Island undertook to repair Boat in a good and workmanlike manner.

50. After many delays on the part of All Island, the Boat was released to Plaintiffs on or about October 27, 2016 after payment to All Island of a total of $47,272.57.

51. Both the port and starboard engines immediately experienced mechanical failures and the Boat was taken to Wehrlen in New Jersey, where the Boat remained until it was donated to charity.

52. The cost to repair/rebuild the port and starboard engines was expected to be in excess of $25,000.00.

53. Plaintiffs notified All Island of this issue and demanded repairs under any available parts and/or labor warranty provided by All Island.

54. All Island has refused to make any repairs with regard to the Boat.

55. All Island did not properly repair/rebuild the port and starboard engines as it was contracted to do.

56. All Island has refused, and continues to refuse, to make the necessary repairs to the port and starboard engines.

57. All Island has refused, and continues to refuse, to honor any parts and/or labor warranty with regard to the starboard engine.

58. Plaintiffs have been damaged in the amount of at least $25,000 due to All Islands' breach of contract and breach of warranty.

## AS AND FOR THE SECOND CAUSE OF ACTION
## BREACH OF WARRANTY
## (VOLVO)

59. Plaintiffs incorporate and restate Paragraphs 1 through 58 above as if fully set forth herein at length and in detail.

60. Upon information and belief, Volvo provides a manufacturers parts warranty for the period of two years.

61. Following the breakdown of the Boat in October 2016, Plaintiffs contacted Volvo to make a warranty claim for repairs required to the starboard engine.

62. Volvo has refused, and continues to refuse, to provide any warranty coverage for the repair of the starboard engine.

63. Plaintiffs have been damaged in the amount of at least $25,000 due to Volvo's breach of warranty.

## AS AND FOR THE THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW YORK CONSUMER PROTECTION LAW
## (AGAINST ALL ISLAND)

64. Plaintiffs incorporate and restate Paragraphs 1 through 63 above as if fully set forth herein at length and in detail.

65. On or about September 13, 2014, All Island took possession of the Boat for the purpose of repairing a oil leak in the port engine.

66. On or about September 29, 2016, All Island took to Boat for a sea trial to test the repair to the port engine.

67. Upon information and belief, All Island ran the Boat aground during the sea trail and concealed and withheld that fact from the Plaintiffs.

68. The VODIA report for the September 29, 2014 sea trial indicated that the engine exceeded the maximum temperature for more than 92 minutes.

69. Despite the VODIA report, All Island stated, with regard to the September 29, 2014 sea trial, the "sea trail results" showed "-temp 180 port // 180 stbd".

70. Upon information and belief, All Island specifically withheld this information in connection with, then contracting to do the repair, the work required to repair/rebuild the starboard engine for a price in excess of $45,000.

71. All State has engaged in deceptive acts or practices in violation of the New York Consolidated Laws, General Business Law §349.

72. As a result, Plaintiffs are entitled to damages together with attorneys fees and reasonable costs associated with this suit in an amount to be proven at trial.

### AS AND FOR THE FOURTH CAUSE OF ACTION
### NEGLIGENCE
### (AGAINST ALL ISLAND AND ERIKSEN)

73. Plaintiffs incorporate and restate Paragraphs 1 through 72 above as if fully set forth herein at length and in detail.

74. On September 13, 2014 All Island took exclusive control of the Boat to do repairs to the port engine.

75. On September 29, 2014 All Island made the decision to take the Boat for a sea trial, rather than performing a in yard test, to determine if the oil leak was corrected in the port engine.

76. During the sea trail All Island negligently operated the Boat in such a manner to damage the starboard engine

77. During the unnecessary sea trial of the Boat on September 29, 2014, All Island should have recognized that the starboard engine was overheating and failed to shut down the engine.

78. All Island continued to run the starboard engine beyond its maximum temperature for more than 92 minutes.

79. Due to All Islands negligence in conducting the sea trail in the first instance, then not recognizing the starboard engine was overheating and finally continuing to run the starboard engine for more than 92 minutes in that condition, caused damages to the Plaintiffs in an amount in excess of $25,000.

80. In addition, once All Island took possession and control of the Boat, and charged Plaintiffs to winterize and shrink wrap the Boat, All Island had an obligation to safeguard the Boat.

81. During the time the Boat was in the sole and exclusive possession of All Island the Boat suffered damages to both the interior and exterior of the Boat.

82. Due to the negligence of All Island in failing to safeguard the Boat, the Plaintiffs have suffered damages of approximately $40,000.00 to restore the boat to the condition it was in on September 13, 2014.

### AS AND FOR THE FIFTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL ISLAND AND ERIKSEN)

83. Plaintiffs incorporate and restate Paragraphs 1 through 82 above as if fully set forth herein at length and in detail

84. On September 13, 2014 All Island took exclusive control of the Boat to do repairs to the port engine.

85. On September 29, 2014 All Island made the decision to take the Boat for a sea trial, rather than performing an in yard test, to determine if the oil leak was corrected in the port engine.

86. During the sea trail All Island negligently operated the Boat in such a manner to damage the starboard engine.

87. During the unnecessary seal trial of the Boat on September 29, 2014, All Island should have recognized that the starboard engine was overheating and failed to shut down the engine.

88. All Island continued to run the starboard engine beyond its maximum temperature for more than 92 minutes.

89. Due to All Islands negligence in conducting the sea trail in the first instance, then not recognizing the starboard engine was overheating and finally continuing to run the starboard engine for more than 92 minutes in that condition, caused the Plaintiffs to be

-12-

deprived from the use and enjoyment of the Boat for a period of September 29, 2014 through October 27, 2016.

90. In addition, once that All Island took possession and control of the Boat, and charged Plaintiffs to winterize and shrink wrap the Boat, All Island had an obligation to safeguard the Boat.

91. During the time the Boat was in the sole and exclusive possession of All Island the Boat suffered damages to both the interior and exterior of the Boat.

92. Accordingly after being deprived of the use and enjoyment of the Boat for a period of more than two years, upon return of the Boat the mechanical condition of the Boat, and the cosmetic appearance of the Boat have cause great distress to Plaintiff Donald Unger.

93. Additionally, the Plaintiffs are once again deprived of use of the Boat as it is again inoperable due the negligence of All Island.

94. The emotional distress of the Plaintiffs is reasonable and foreseeable under the circumstances.

95. Due to the negligent infliction of emotional distress, the Plaintiffs have suffered damages in an amount to be proven at trial.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**
**(AGAINST ALL ISLAND AND ERIKSEN)**

96. Plaintiffs incorporate and restate Paragraphs 1 through 95 above as if fully set forth herein at length and in detail.

97. On or about September 13, 2014, All Island took possession of the Boat for the purpose of repairing a oil leak in the port engine.

98. On or about September 29, 2016, All Island took to Boat for a sea trial to test the repair to the port engine.

99. Upon information and belief, All Island ran the Boat aground during the sea trail and concealed and withheld that fact from the Plaintiffs.

100. The VODIA report for the September 29, 2014 sea trial indicated that the engine exceeded the maximum temperature for more than 92 minutes

101. Despite the VODIA report, All Island stated, with regard to the September 29, 2014 sea trial, the "sea trail results" showed "-temp 180 port // 180 stbd".

102. All Island intentionally withheld this information, knowing that the probable result would be that Plaintiffs would be deprived of the use and enjoyment of the Boat for an extended period of time.

103. The emotional distress of the Plaintiffs is reasonable and foreseeable under the circumstances.

104. Due to the intentional infliction of emotional distress, the Plaintiffs have suffered damages in an amount to be proven at trial.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## (AGAINST ALL ISLAND AND VOLVO)

105. Plaintiffs incorporate and restate Paragraphs 1 through 104 above as if fully set forth herein at length and in detail.

106. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(3).

107. Defendants are "warrantors" within the meaning of the Magnuson-Moss Warranty Act 15 U.S.C. §2301(5).

108. The Boat is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act 15 U.S.C. §2301(1).

109. Title 15, United States Code, secrion 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty or under a service contract.

110. Defendants' express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act 15 U.S.C. §2301(6). The Boats' implied warranty is covered under 15 U.S.C. §2301(7).

111. Defendants breached these warranties as described in more detail above.

112. Defendants have had reasonable opportunity to cure breeaches of warranty but have refused to do so.

113. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs.

114. Due to the violation of The Magnuson -Moss Warranty Act, Plaintiff has suffered damages in an amount to be proven at trial .

**WHEREFORE,** Plaintiffs, Donald Unger and Linico, Corp, respectfully requests a Judgment against Defendants, as follows:

(i) On the First Cause of Action as against Defendant All Island Marine Corp. and Eriksen, damages in the amount of at least $25,000.00;

(ii) On the Second Cause of Action as against Defendant Volvo Penta of the Americas LLC., damages in the amount of at least $25,000.00;

(iii) On the Third Cause of Action as against Defendant All Island Marine Corp., damages in accordance with the New York Consolidated Laws, General Business Law §349, damages together with attorneys fees and reasonable costs associated with this suit in an amount to be proven at trial;

(iv) On the Fourth Cause of Action as against Defendant All Island Marine Corp. and Eriksen, damages in the amount of at least $65,000.00;

(v) On the Fifth Cause of Action as against Defendant All Island Marine Corp. and Eriksen, damages in an amount to be determined at trial;

(vi) On the Sixth Cause of Action as against Defendant All Island Marine Corp. and Eriksen, damages in an amount to be determined at trial;

(vii) On the Seventh Cause of Action against Defendants All Island Marine Corp., and Volvo Penta of the Americas LLC, damages together with attorney fees and reasonable costs in an amount to be determined at trial; and

(viii) For attorneys fees under applicable law, including The Magnuson-Moss Warranty Act 15 U.S.C. §2310, the New York Consolidated Laws, General Business Law §349(h) and any other, further, or different relief as the Court deems just and proper.

**HEIMERL LAW FIRM**
Attorneys for Plaintiffs

Dated: July 28, 2018

By: Wolfgang Heimerl, Esq.

## DEMAND FOR JURY TRIAL

Please be advised that Plaintiffs request a trial by jury for all issues in this action.

                                                  **HEIMERL LAW FIRM**
                                                  Attorneys for Plaintiffs

Dated: July 28, 2018

                                                  By: Wolfgang Heimerl, Esq.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**HEIMERL LAW FIRM**
Attorneys for Plaintiffs

Dated: July 28, 2018

By: Wolfgang Heimerl, Esq.